PERRY L. FULLER, APPELLEE, v. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, APPELLANT.

FILED APRIL 1, 1916.  No. 18184.

1. **Carriers: DUTIES: SHIPMENT OF LIVE STOCK.** It is the duty of a
common carrier to furnish safe and suitable cars to be used in
shipping animals, and for failure to do so the carrier is liable,
if damages result by reason of such failure.

2. ————: **LIABILITY OF INITIAL CARRIER.** Where a defective car is
furnished by an initial carrier for the transportation of animals
to a point beyond its own line, and injuries are sustained by the
animals by reason of such car being out of repair, the initial car-
rier is liable for such damages, in the absence of any proof of
negligence by the connecting carrier.

REHEARING of case reported in 98 Neb. 727. *Former
judgment of reversal set aside, and judgment of district
court affirmed.*

LETTON, J.

Rehearing of case reported in 98 Neb. 727. In the for-
mer opinion it was held that the plaintiff could not recover
for any injuries occurring to his horses on the line of the
Union Pacific Railroad Company, for the reason that a
judgment had been rendered in the action in favor of the
Union Pacific Railroad Company and against him on the
issues. In the motion for rehearing, and on the argument,
our attention was called more particularly to the principle
that an initial carrier is liable for all damages occurring
due to a defective car furnished by it, although the in-
juries may have occurred upon the line of a connecting
carrier.

The testimony on behalf of plaintiff is that some of the
horses were injured by falling through a defective loading
chute at Ewing. There is also testimony that the door of
one of the cars in which the horses were loaded was broken

and loose; that there was no "bull-board" to keep the animals from the door after they were loaded; and that there was a board broken off at the corner of the car about 18 or 20 inches long. Plaintiff testifies that when the car arrived in Grand Island the horses' legs were skinned and swollen, and there was hair on the boards of the car showing where their legs had slipped through. For the defendant, the conductor admits there was a "bull-board" missing, and testifies that he procured some wire and wired the car in several places to protect the door. He and other witnesses for the defendant deny that the car was broken or defective in any way at the time the horses were loaded, or when it left Norfolk. We are satisfied that there is sufficient evidence to support a finding that the car was defective at the time it left Ewing.

Complaint is made of the giving of instruction No. 12, to the effect that, if the jury found "that the defendant company negligently failed to provide a safe and suitable car for the 'transportation of the horses, and that the car furnished was defective, then the defendant company would be liable for any damages to the stock resulting from the defective condition of the car, whether said damages occurred on its own line or on the line of the Union Pacific railroad." This was not erroneous. It is the duty of a common carrier to furnish suitable and proper cars to be used in shipping live stock. *Chicago, St. P., M. & O. R. Co. v. Deaver*, 45 Neb. 307; *Union P. R. Co. v. Langan*, 52 Neb. 105; *Allen v. Chicago, B. & Q. R. Co.*, 82 Neb. 726. If damages result for failure to do so, the carrier is liable. The principle of law applicable in this case is clearly stated in 2 Hutchinson, Carriers (3d ed.) sec. 499, as follows: "Where the vehicle is furnished by an initial carrier for the transportation of goods to a point beyond his own line, and he negligently violates his duty by furnishing a vehicle which is defective, he will be liable for any subsequent damage arising from the defective condition of the vehicle, although such damage develops on the line of a connecting carrier. And this rule will remain true even though the

initial carrier expressly confines his liability for damages to his own line." A number of cases announcing this principle are collected in the note to *Atlantic C. L. R. Co. v. Riverside Mills*, 31 L. R. A. n. s. 7, at page 81 (219 U. S. 186) ; 4 R. C. L. p. 879.

There is no proof of any injury occurring on the line of the Union Pacific railroad. The horses were injured, and their appearance, when unloaded, indicated the injuries had been suffered some time before; the blood having caked and dried upon their legs.

It is urged there was no competent evidence of damages to the horses on which a verdict could be based. Plaintiff testified, without objection, that there was a difference of $35 between the value of one of the animals before it was injured and afterwards, and gave like testimony as to the others. The claim inspector for the Union Pacific Railroad Company was sent to examine the horses, according to the custom of that company. He examined the stock, and testified, without objection, to the amount that each injured animal was damaged. Defendant requested an instruction to the effect that, if the jury believed three of the horses were injured at the loading chute, they might under the evidence find a verdict for plaintiff to the amount of $75. Having let the evidence in without objection as to its competency, and having requested an instruction based upon the theory that it was competent, defendant cannot now urge that the court erred in its reception. We find no prejudicial error in the record.

The former judgment of this court is set aside, and the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

BARNES and HAMER, JJ., dissent.